IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED

98 APR 22 PM 3: 45

U.S. DISTRICT COURT
N.D. OF ALABAMA

EARL NORMAN CARTER, III,      )
                             )
          Plaintiff           )
                             )
vs.                           )     CASE NO. CV98-HGD-0826-S
                             )
KOPPERS INDUSTRIES, INC.,     )
                             )
          Defendant           )

ENTERED

APR 22 1999

## MEMORANDUM OPINION

On December 17, 1998, defendant, Koppers Industries, Inc., filed a motion for summary

judgment in the above-entitled action. [Doc. #29]. Plaintiff, Earl Norman Carter, III, submitted a

response in opposition to defendant's motion on February 16, 1999, to which defendant filed a reply

on March 18, 1999. [Doc. #42]. The parties have consented to the jurisdiction of the magistrate

judge for disposition of this matter, pursuant to 28 U.S.C. § 636(c). Having considered the briefs

and submissions of the parties, the court finds as follows.

### FACTUAL BACKGROUND

In 1983, plaintiff enlisted in the U.S. Marine Corps. He served on active duty until February

1984, except for another period of active duty in Operation Desert Storm in 1991. Since February

1984, except during Desert Storm, plaintiff has been a member of the U.S. Marine Corps Reserves.

His rank is an E-7/ Gunnery Sergeant. [Deposition of Plaintiff at 29-30]. Plaintiff began

employment with the defendant in 1992. He was promoted to a brick mason trainee position in about October 1993. [*Id*. at 37].

After being hired by Koppers Industries in 1992, plaintiff took periodic leaves of absence for military drills and training. [*Id*. at 30-31]. Plaintiff would notify his supervisor whenever he received advance notice of a scheduled drill, though these dates sometimes would change. When this occurred, he also would notify his supervisor of the change. [*Id*. at 33-34]. On occasion, he would receive notice of reserve duty but not actually have written orders in hand to provide to defendant. In these situations, he provided oral notice before taking leave and provided defendant with a copy of his orders when he returned, or he would fax the orders to Koppers when he received them. [*Id*. at 39-43, 77].

In April 1996, plaintiff was called to a meeting with supervisory personnel John Vining and Anthony Giattina. At this time, he was questioned about his military-related absences. According to plaintiff, Vining continually inquired whether the military training was voluntary. Plaintiff stated that his absences were required by his military occupational speciality ("MOS"). Plaintiff also stated that he was asked how much notice he would get before these absences. He responded that he advised his supervisor (Mr. Giattina) as soon as possible; that is, as soon as he received any kind of notification. [*Id*.] At that meeting, plaintiff orally notified Mr. Vining and Mr. Giattina that he would be on military leave for nine weeks beginning in June 1996. [*Id*. at 52-53].

On or about June 5, 1996, plaintiff went on military leave before receiving written orders. Once he received his orders later that same day, he faxed them to Koppers Industries. [*Id*. at 57-58]. These orders reflected that plaintiff's period of active duty would be from June 5, 1996, to August 2, 1996. [*Id*. at 57]. According to plaintiff, based on these orders, he expected to return to work within

2

14 days of his return from training, as required by statute, which would have had him back at work

between August 5 and August 19. However, he stated that there was no certain date he expected to

return to work, and he did not remember telling his supervisor that he would return on any particular

date. [*Id*. at 59-60].

Plaintiff was sent to California for training. On August 2, 1996, as his training ended and

he was preparing to return to Alabama, plaintiff's orders were modified. On that date, he received

written orders to go to Pearl Harbor, Hawaii, for additional training. He received these orders at

about noon on August 2 and was scheduled to be on a flight which left for Hawaii at 2:00 p.m. [*Id*.

at 62-64]. These orders were issued to provide plaintiff with dive training required in his MOS. He

expected this training to last no longer than six weeks. [*Id*. at 67].

Both before leaving California and shortly after arriving in Hawaii, plaintiff called his wife

regarding his changed travel plans. [*Id*. at 69]. However, he did not call anyone at Koppers

Industries on either occasion to notify them that he would be gone for another six weeks. After his

arrival in Hawaii on August 3, plaintiff rested until his training commenced on August 5. [*Id*. at 71].

Though he had access to a phone, he made no attempt to contact Koppers Industries or any of his

co-employees between August 3 and August 19. [*Id*. at 74, 85].

Plaintiff's two most recent military leaves prior to June 1996 occurred in August 1995 and

February 1996 when he went for training which lasted five weeks and three weeks, respectively. On

those occasions, plaintiff orally notified Koppers Industries in advance of this pending military duty

and provided copies of his written orders when he returned. His leave did not extend beyond the

originally designated time periods of five and three weeks on either of these occasions. [*Id*. at 78-79].

3

On August 19, 1996, plaintiff heard from his wife that Koppers Industries was wondering

where he was.  Upon learning this, he attempted to call the office but it was after hours and closed.

Thereafter, he faxed a copy of his modified orders to Koppers. [*Id.* at 90-91].  A day or two later,

plaintiff spoke by phone with Koppers Industries personnel Terry Watkins and Don Hall.  Hall asked

plaintiff where he was and Carter advised him he was in Hawaii.  Hall also asked plaintiff when he

was coming home, and Carter advised him he could probably be back at work on September 16,

following his September 13 graduation from training. [*Id.* at 92-93].  Hall advised plaintiff that

Koppers Industries personnel had not known whether plaintiff was gone indefinitely or when he

would be returning.  Hall further advised plaintiff that as a result, a termination proceeding was

underway which Hall thought he could stop. [*Id.* at 93-94].  However, before plaintiff returned to

Alabama, plaintiff's wife received a letter dated September 3, 1996, advising plaintiff that he was

terminated effective that day.  The stated reason was that Carter was supposed to return to work after

the termination of his military duty on August 2, 1996, and that Koppers Industries did not hear from

him until the fax of August 19, 1996, 17 days later.  The letter further stated that, according to the

company labor agreement, an employee will be terminated if they are off work for a period of nine

calendar days without notice to their supervisor. [*Id.* at 98, 99; Defendant's Exhibit 10].  Plaintiff

returned from military duty and reported for work on September 16, 1996.  At that time, he was

advised that he would not be allowed to return to work. [Deposition of Plaintiff at 103].


### DISCUSSION

Summary judgment is appropriate only when there is no genuine issue as to any material fact.

Fed.R.Civ.P. 56(c).  All the evidence and all reasonable factual inferences must be drawn in favor

4

of the non-movant. *See Rayle Tech, Inc. v. DeKalb Swine Breeders, Inc.,* 133 F.3d 1405, 1409

(11th Cir. 1998). The plain language of Rule 56(c) mandates entry of summary judgment, after

adequate time for discovery upon motion, against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear

the burden of proof at trial. *Celotex v. Catrett,* 477 U.S. 317, 323-24, 106 S. Ct. 2548, 2552-53, 91

L.Ed.2d 265 (1989).

This action was commenced under the Uniformed Services Employment and Reemployment

Rights Act ("USERRA"), codified at 38 U.S.C. §§ 4301, *et seq.* (1994). This act replaced the

Veterans Reemployment Rights Act, 38 U.S.C. §§ 2021, *et seq.* (1988), in order to "clarify, simplify,

and, where necessary, strengthen the existing veterans' employment and reemployment rights

previous." H.R. Rep. No. 103-65, at 18 (1994). The new act applies to employment actions

occurring after October 31, 1994.

Title 38 U.S.C. § 4312 states, in pertinent part, as follows:

> **§ 4312. Reemployment rights of persons who serve in the uniformed services**
>
> (a) Subject to subsections (b), (c), and (d) and to section 4304, any person whose
> absence from a position of employment is necessitated by reason of service in the
> uniformed services shall be entitled to the reemployment rights and benefits and
> other employment benefits of this chapter [38 USCS §§ 4301, et seq.] if—
>
>> (1) the person (or an appropriate officer of the uniformed service in which
>> such service is performed) has given advance written or verbal notice of
>> such service to such person's employer;
>> (2) the cumulative length of the absence and of all previous absences from
>> a position of employment with that employer by reason of service in the
>> uniformed services does not exceed five years; and
>> (3) except as provided in subsection (f), the person reports to, or submits
>> an application for reemployment to, such employer in accordance with the
>> provisions of subsection (e).
>
> (b) No notice is required under subsection (a)(1) if the giving of such notice is
> precluded by military necessity or, under all of the relevant circumstances, the
> giving of such notice is otherwise impossible or unreasonable. A determination of

5

military necessity for the purposes of this subsection shall be made pursuant to regulations prescribed by the Secretary of Defense and shall not be subject to judicial review.

The defendant, Koppers Industries, Inc., has moved for summary judgment in this case based on the assertion that, since plaintiff failed to give notice to Koppers of the extension of his military service from August 2 to September 13, 1996, he failed to comply with the notice requirement of 38 U.S.C. § 4312(a)(1). According to defendant, this inaction by plaintiff disqualifies him from the benefits of USERRA, entitling Koppers Industries to a summary judgment.

According to plaintiff, USERRA does not require the "re-notification" of an employer when a service member's duty is modified and extended. The plaintiff asserts that since he gave Koppers Industries notice that he was taking military leave effective June 5, 1996, the fact that he failed to inform defendant of the modification and extension of his orders does not affect his reemployment rights under USERRA since, even after the extended leave, his total time taken for military service did not exceed the five-year maximum allowed under § 4312(a)(2). In addition, plaintiff states that the evidence reflects that the company was aware that he was training in Hawaii based on a comment made to him by supervisor Terry Watkins (now deceased) after his return. In support of this argument, plaintiff points out that the only requirement concerning giving an employer notice of a return date is found in 38 U.S.C. § 4312(e)(1) which, in plaintiff's case, requires a service member to notify an employer of his or her intent to return to work within 14 days of the completion of the period of service.

In essence, the defendant claims that plaintiff's extension of his orders to include a training session in Hawaii from August 3 to September 13, 1996, was a period of military leave separate and apart from that which plaintiff took from June 5 to August 2, 1996, requiring plaintiff once again to

6

give notice as required by § 4312(a)(1). Plaintiff asserts that both training exercises count as one uninterrupted period of leave because he had no "break in service" from June 5 to September 13, 1996, though he trained in reconnaissance in California until August 2, traveled to Hawaii on August 2-3, and trained as a scuba diver from August 5 to September 13, 1996.

It is undisputed that plaintiff's military orders, which he sent to Koppers Industries, reflect that his period of training was to last from June 5, 1996, to August 2, 1996, and that he had earlier orally advised Koppers that he would be gone for six weeks. Furthermore, after the modification/extension of his orders on August 2, 1996, it is undisputed that he traveled to Hawaii, rested two days, and trained from August 5 until August 19, 1996, without contacting anyone at Koppers Industries by phone, mail, or fax to notify them of his orders sending him to Hawaii.

The legislative history of the USERRA's predecessor, the Veterans Readjustment Act of 1974, 38 U.S.C. §§ 2021, *et seq.*, indicates that this law was enacted "for the significant but limited purpose of protecting the employee-reservist against discrimination such as discharge and demotion, motivated solely by reserve status." *Monroe v. Standard Oil Co.*, 452 U.S. 549, 559, 101 S.Ct. 2510, 2516, 69 L.Ed.2d 226 (1981). It is not intended to endow a reservist with unreasonable powers over his employer or to cause his employer unreasonable hardship. The protection of the statute is based upon the veteran's compliance with the reasonable and ordinarily accepted standards of personal conduct and performance of duty of all employees. *Burkart v. Post-Browning, Inc.*, 859 F.2d 1245, 1248 (6th Cir. 1988).

The purpose of providing notice to the employer is to give the company the opportunity to make scheduling adjustments and take other steps to help it cope with the temporary loss of an employee. Plaintiff's failure to report and inform his employer of his Hawaiian military training

7

denied Koppers the opportunity to do this. It was also a failure of plaintiff to act responsibly. Responsibility in informing his employer of his whereabouts is the obligation of any employee regardless of whether his absence is related to military duty or some other personal need. *Id.*

Plaintiff's claim that the USERRA does not require him to notify his employer of an extension of his military duty simply because the Act itself allows up to five years of absences is without merit. The USERRA protects a reservist from discrimination based on his reserve obligations; it does not endow him with any advantage over non-military employees. If a non-reserve employee in the reserve employee's same position would be terminated for the same or similar conduct, the employee's reserve status cannot insulate him. *Id.*

Plaintiff had ample notice, under the union contract, that an unexplained absence in excess of nine days subjected him to possible termination.[1] Although he was legally entitled to take military leave, he was not entitled to do so without notice to his employer. By way of example, a non-military employee may accrue three weeks of paid vacation. If he notifies his employer that he is taking two of those weeks and, at the end of that period, decides to take the third week without notice to the employer, he runs the risk of termination–not because he took leave to which he was entitled, but because he did so without notice to the employer. Thus, plaintiff's behavior in failing to notify Koppers Industries of his whereabouts from August 2 to August 19, 1996, is the direct cause of his subsequent termination without regard to the fact that he was engaged in military training during that time.

---

[1] Plaintiff would have had 14 days after the termination of his duty to request reemployment. If he had applied within 14 days of August 2, this "nine-day" rule would give way to the USERRA and extend to 14 days. However, he did not. Therefore, this fact is irrelevant.

8

The court finds that in order to comply with 38 U.S.C. § 4312(a)(1), plaintiff had an obligation to notify Koppers Industries of his military leave in Hawaii and that to do so was neither impossible nor unreasonable under all of the relevant circumstances.

Plaintiff also asserts that at some time during his absence, a supervisor at Koppers Industries became aware of his scuba training in Hawaii based on a comment made to him later by (now deceased) supervisor Terry Watkins that "we knew where you were the whole time, but people were laughing at us because you were in Hawaii swimming with the Marine Corps and you weren't at work." [Deposition of Plaintiff at 17]. However, plaintiff's Exhibit F reflects that no one at Koppers Industries knew where plaintiff was until the plant manager spoke to Carter's wife sometime after August 12, 1996, and she informed him that Carter had gone on to a scuba diving course in Hawaii after his basic reconnaissance course. [Plaintiff's Exhibit F]. Indeed, there appears to be no other way that Koppers could have found out where plaintiff was since his own deposition reflects that he spoke only with his wife, and possibly a couple of friends in California, during his entire stay in Hawaii. [Deposition of Plaintiff at 85].

This attempt to impute knowledge of plaintiff's whereabouts to defendant is clearly insufficient to qualify as notice under § 4312(a)(1). The evidence reflects that, if Koppers received notice of plaintiff's continued training, it was not until August 12, 1996, at the earliest. This is not advance notice as required for complying with the letter of § 4312(a)(1), but, more importantly, it also did not comport with the manner in which Koppers had allowed plaintiff to comply with § 4312(a)(1) in the past. If he did not have orders in hand by the time he left for military duty, Koppers previously had allowed plaintiff to either fax his orders to them or bring them in upon his return. However, they consistently obtained notice of his military duty, either written or oral, in

9

advance of his departure. Though plaintiff clearly had opportunities to call, write, or fax his whereabouts to defendant, he totally failed to do so. This failure is exacerbated by the fact that Koppers, even if it was aware that plaintiff was in Hawaii, had no way to contact him until he gave a telephone number to a Koppers supervisor sometime after August 19. [Deposition of Plaintiff at 101-102]. Thus, even assuming plaintiff's wife did advise someone at Koppers Industries of his whereabouts, they had no way of confirming this. Similarly, they had no way of confirming whether plaintiff's scuba diving training was, in fact, bona fide military training in the absence of any contact from plaintiff himself. Title 38 U.S.C. § 4312 (a)(1) requires that notice of military duty be given either by the service person "or an appropriate officer of the uniformed service in which such service is performed." Thus, any information concerning plaintiff's whereabouts after August 2 received from plaintiff's wife was inadequate to comply with § 4312(a)(1).

Having admitted that he failed to provide notice of his Hawaiian duty, the plaintiff has forfeited his right to the protection of the USERRA. There being no issue of material fact necessary for the determination of this issue remaining in dispute, the defendant is entitled to a summary judgment as a matter of law.

A separate order in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this _22_nd day of April, 1999.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE

10